

DA 11-0566

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 301

NICOLE ALEXANDER, as Personal Representative of the
Estate of Mike Alexander, and HELEN ALEXANDER,

      Plaintiffs and Appellants,

   v.

BOZEMAN MOTORS, INC., d/b/a
BOZEMAN FORD, DAVID A. WALLIN,
BOB SNEDEKER, and ROGER BEVERAGE,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                 In and For the County of Gallatin, Cause No. DV-05-699
                 Honorable John C. Brown, Presiding Judge

COUNSEL OF RECORD:

      For Appellant Nicole Alexander:

            Edward P. Moriarity, Shandor S. Badaruddin, Moriarity, Badaruddin
            & Booke, LLC, Missoula, Montana

      For Appellant Helena Alexander:

            Gig A. Tollefsen, Berg, Lilly & Tollefsen, P.C., Bozeman, Montana

      For Appellees:

            Donald R. Herndon, Herndon Law Firm, P.C., Billings, Montana

For Intervenor State of Montana:

Bradley J. Luck, Garlington, Lohn & Robinson, PLLP, Missoula, Montana

Steve Bullock, Montana Attorney General, J. Stuart Segrest, Assistant Attorney General, Helena, Montana

Submitted on Briefs:  September 26, 2012

Decided:  December 20, 2012

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Nicole and Helen Alexander appeal several rulings of the Eighteenth Judicial District Court, Gallatin County, regarding jury instructions, a motion in limine, and a subsequent jury verdict finding that Bozeman Motors, Inc. and its employees were not liable to Michael Alexander.  We affirm.

## ISSUES

¶2     Appellants Nicole and Helen Alexander raise the following four issues on appeal:

¶3     1.  Does § 39-71-413(2), MCA, create an impermissible class of employees in violation of equal protection rights set forth in Article II, Section 4 of the Montana Constitution?

¶4     2.  Did the District Court abuse its discretion when it excluded the term "employee" from Jury Instruction No. 34?

¶5     3.  Did the District Court abuse its discretion in rejecting the Plaintiff's Proposed Jury Instruction Nos. 25, 26, 28 and 29?

¶6     4.  Did the District Court abuse its discretion when it denied Plaintiffs' motion in limine to exclude Michael Alexander's cause of death?

## FACTUAL AND PROCEDURAL BACKGROUND

¶7     In 2003, Bozeman Motors opened a recreational vehicle dealership near the Four Corners area west of Bozeman.  Bozeman Motors purchased a 12 foot by 24 foot prefabricated log building to serve as the office.  The building was delivered to the lot on August 28, 2003.  Bozeman Motors hired a contractor to sheetrock and finish the building

3

so that it would be suitable as a sales office. The building contained no heat source when it was purchased. As the weather began to turn colder, Bozeman Motors bought a propane stove to serve as the building's heat source. The propane stove was installed in late September 2003.

¶8 Burt Ostermiller started working out of the Four Corners office on September 1, 2003. Ostermiller claimed that the propane stove leaked propane and caused an unhealthy buildup of carbon monoxide. Ostermiller claimed that exposure to carbon monoxide in his work environment caused him to become sick. He experienced symptoms of dizziness and vomiting. Ostermiller noticed a strong chemical odor in the office, and members of his family noticed a chemical smell on his clothing. Ostermiller claimed that he reported the odor and his symptoms to his supervisors, but Bozeman Motors took no action to remedy the situation. Ostermiller alleged that on November 1, 2003, his girlfriend discovered him unconscious in the office. Following this incident, Ostermiller never returned to work at Bozeman Motors.

¶9 Michael Alexander (Alexander) replaced Ostermiller in the Four Corners office in November 2003. Bozeman Motors hired Alexander in February 2003. Alexander worked at Bozeman Motors' 19th Avenue location until being transferred to Four Corners. Alexander claimed that Bozeman Motors did not warn him of any problems with the propane stove or inform him of Ostermiller's complaints. Soon after beginning work at the Four Corners office, Alexander began to experience headaches, nausea, fatigue and other health problems. Alexander expressed his concerns to Bozeman Motors regarding his symptoms and the lack of ventilation in the office. Alexander's family and

4

friends noticed a chemical odor on his clothing when he would come home after work. Alexander also claimed that the fumes in the office affected his dog to the point that his dog refused to enter the building. In April 2004, Alexander quit his job with Bozeman Motors alleging that he was too sick to continue working in the Four Corners building.

¶10 Shortly after he quit, Alexander's brother, Ted Alexander, arranged to have Greg Brainerd inspect the Four Corners office. Brainerd is a home inspector and the owner of Brainerd Home Inspection. During his inspection of the building, Brainerd smelled propane and noticed that the stove was short cycling, causing it to turn off and on. Brainerd did not believe the stove was functioning properly. Brainerd reported the results of his inspection to Bozeman Motors. Bozeman Motors subsequently conducted its own investigation of the propane stove, enlisting the assistance of MAC Propane. MAC Propane did not uncover any problems with the propane stove, but at the time of its inspection the stove had been turned off for several days. Bozeman Motors removed the propane stove from the office.

¶11 On November 8, 2005, Alexander and Ostermiller filed suit against Bozeman Motors, David Wallin, Bob Snedeker and Roger Beverage alleging negligence, battery, and negligent or intentional infliction of emotional distress. Defendant David Wallin was the president, vice president, chairman of the board of directors, sole shareholder, and general manager of Bozeman Motors. Defendant Bob Snedeker served as the general sales manager, and Defendant Roger Beverage worked as the recreational vehicle manager. Plaintiffs claimed long-term physical and emotional injuries resulting from exposure to carbon monoxide and propane. Plaintiffs also requested punitive damages.

5

¶12 Alexander died on February 20, 2006. Alexander's daughter, Nicole Alexander, joined the lawsuit as the personal representative of Alexander's estate. Alexander's mother, Helen Alexander, also became a party to the lawsuit following her son's death.

¶13 On March 1, 2007, Bozeman Motors moved for summary judgment on the basis that the claims against it were barred by the exclusive remedy provision[1] of Montana's Workers' Compensation Act[2] (WCA). In response, Ostermiller and Alexander argued that they had been intentionally injured by the intentional acts of Bozeman Motors and its employees, so their cause of action fell outside the exclusivity provision of the WCA, pursuant to § 39-71-413, MCA.[3] Ostermiller and Alexander also contended that § 39-71-413, MCA, which was amended in 2001 to exclude vicarious liability for the intentional and deliberate acts of an employee, impermissibly creates two classes of employees in violation of equal protection rights set forth in Article II, Section 4 of the Montana Constitution. Plaintiffs further argued that § 39-71-413, MCA, is an unconstitutional grant of special privileges and immunities in violation of Article II, Section 31 of the Montana Constitution, and is an unconstitutional piece of special legislation in contravention of Article V, Section 12.

---

[1] The "exclusive remedy provision" refers to § 39-71-411, MCA, which provides that "[f]or all employments covered under the Workers' Compensation Act or for which an election has been made for coverage under this chapter, the provisions of this chapter are exclusive." With limited exceptions, "an employer is not subject to any liability whatever for the death of or personal injury to an employee covered by the Workers' Compensation Act or for any claims for contribution or indemnity asserted by a third person from whom damages are sought on account of the injuries or death."

[2] This cause of action is governed by the 2003 version of the WCA.

[3] Section 39-71-413, MCA, provides a statutory exception to the exclusivity provision of § 39-71-411, MCA, for causes of action in which an employee is intentionally injured by an intentional and deliberate act of his employer or fellow employee.

6

¶14 The District Court held a hearing on Bozeman Motors' motion for summary judgment on September 17, 2007. On March 26, 2008, the District Court granted Bozeman Motors' motion for summary judgment, holding that the conduct of Bozeman Motors and its employees did not rise to the level of deliberate intent to cause specific harm, and that § 39-71-413, MCA, does not violate any of the constitutional provisions cited by Ostermiller and Alexander.

¶15 Plaintiffs appealed the District Court's grant of summary judgment and dismissal of their claims against Bozeman Motors and its employees. This Court considered the Plaintiffs' appeal of two issues: (1) whether the District Court erred in granting summary judgment on Alexander and Ostermiller's claims; and (2) whether § 39-71-413, MCA, is unconstitutional. We resolved these issues in *Alexander v. Bozeman Motors, Inc.*, 2010 MT 135, 356 Mont. 439, 234 P.3d 880 (*Alexander I*).

¶16 In *Alexander I,* we affirmed the entry of summary judgment in favor of Bozeman Motors with respect to Ostermiller's claims, but reversed the District Court on Alexander's claims. This Court held that "deliberate and intentional conduct may be inferred from factual allegations indicating that an employer knew an employee was being harmed, failed to warn the employee of the harm, and intentionally continued to expose the employee to the harm." *Alexander I*, ¶ 30. We determined that Ostermiller failed to demonstrate that he suffered an intentional injury as defined by § 39-71-413(3), MCA, because he presented "no factual allegations sufficient to support the inference that Bozeman Motors had actual knowledge of the certainty that he would be harmed." *Alexander I*, ¶ 32. However, since Alexander alleged that Bozeman Motors had actual

knowledge of the harm posed by the stove in light of a previous incident where Ostermiller lost consciousness, and Bozeman Motors did not warn Alexander even when he lodged similar complaints, we concluded that these factual allegations were sufficient to avoid summary judgment. *Alexander I*, ¶ 31. On the constitutional challenges to § 39-71-413, MCA, we held that Ostermiller and Alexander failed to meet their burden of demonstrating the unconstitutionality of the statute beyond a reasonable doubt. *Alexander I*, ¶ 36.

¶17 Alexander's claims were remanded to the District Court for further proceedings. A jury trial commenced on August 22, 2011, and lasted ten days. The jury returned a verdict in favor of Bozeman Motors, Wallin, Snedeker and Beverage on all claims. Nicole and Helen Alexander appeal from the jury verdict and allege that the jury was improperly instructed on the law by the District Court, the District Court abused its discretion in denying Plaintiffs' motion in limine to exclude Alexander's cause of death, and § 39-71-413(2), MCA, violates the right to equal protection under the Montana Constitution.

## STANDARDS OF REVIEW

¶18 Multiple standards of review are implicated in our resolution of this appeal.

¶19 This Court's review of constitutional questions is plenary. *Walters v. Flathead Concrete Prods.*, 2011 MT 45, ¶ 9, 359 Mont. 346, 249 P.3d 913. The constitutionality of a statute is a question of law, and we review a district court's legal conclusions for correctness. *Walters*, ¶ 9.

8

¶20 Mootness is a question of law we review de novo. *Reichert v. State*, 2012 MT 111, ¶ 20, 365 Mont. 92, 278 P.3d 455.

¶21 A district court's decision regarding jury instructions is reviewed for an abuse of discretion. *Patterson Enters. v. Johnson*, 2012 MT 43, ¶ 47, 364 Mont. 197, 272 P.3d 93. Though the district court's discretion is broad, it is ultimately restricted by the overriding principle that jury instructions must fully and fairly instruct the jury regarding the applicable law. *Patterson*, ¶ 47. To constitute reversible error, the instructions must prejudicially affect the litigant's substantial rights. *Patterson*, ¶ 47.

¶22 A district court's ruling on a motion in limine is an evidentiary ruling that this Court reviews for an abuse of discretion. *Boude v. Union Pac. R. R. Co.*, 2012 MT 98, ¶ 9, 365 Mont. 32, 277 P.3d 1221.

## DISCUSSION

¶23 *Does § 39-71-413(2), MCA, create an impermissible class of employees in violation of equal protection rights set forth in Article II, Section 4 of the Montana Constitution?*

¶24 The WCA provides the exclusive remedy for an employee who suffers an injury in the course and scope of his employment, subject to a narrow exception. Section 39-71-411, MCA; *Wise v. CNH Am., LLC,* 2006 MT 194, ¶ 7, 333 Mont. 181, 142 P.3d 774. An injured employee may bring a separate action against an employer or fellow employee "[i]f an employee is intentionally injured by an intentional and deliberate act of the employee's employer or by the intentional and deliberate act of a fellow employee while performing the duties of employment." Section 39-71-413(1), MCA; *Wise*, ¶ 7. Section 39-71-413(3), MCA, defines "intentional injury" as "an injury caused by an

9

intentional and deliberate act that is specifically and actually intended to cause injury to the employee injured and there is actual knowledge that an injury is certain to occur." Therefore, in order for Alexander to recover damages from his claims outside the WCA, Alexander needed to prove at trial that he was intentionally injured by an intentional and deliberate act of Bozeman Motors or its employees.

¶25 Section 39-71-413, MCA, was amended in 2001 to include the language now found in subsection (2): "An employer is not vicariously liable under this section for the intentional and deliberate acts of an employee." Alexander argues that this language impermissibly creates two separate and distinct classes of employees in Montana: (1) those who work for sole proprietorships or partnerships; and (2) those who work for corporations. Since corporations can act only through principals, agents, and employees, Alexander contends that the sole mechanism for holding a corporation liable for the intentional and deliberate actions of its employees in the course and scope of their employment is through vicarious liability. This is in contrast to sole proprietorships and partnerships, which can be held directly liable for intentional actions because these entities are actual, physical people. Alexander argues that the legal effect of this distinction is that a corporate employer enjoys a "shield of liability" that does not exist for sole proprietorships or partnerships. As a result, corporations can never be held liable for what are essentially their own actions, thus removing all incentive to maintain a safe workplace. Alexander contends that as applied, the statute is unconstitutional under Article II, Section 4 of the Montana Constitution, which states: "No person shall be denied the equal protection of the laws."

10

¶26 Bozeman Motors and intervenor State of Montana counter that this Court should not reach the constitutional issue because it is moot and the law of the case precludes our consideration of the issue. Should we reach the equal protection challenge, Bozeman Motors and the State contend that § 39-71-413, MCA, is constitutional. They argue that Alexander's challenge must fail because no particular exception to workers' compensation exclusivity is constitutionally required, the statute does not create an improper classification, and Alexander has failed to demonstrate an impermissible discriminatory purpose behind any classification.

¶27 In our review of the parties' arguments, we note that legislative enactments are presumed constitutional, and the party challenging a statute bears the burden of proving the statute unconstitutional beyond a reasonable doubt. *Elliot v. State Dept. of Revenue*, 2006 MT 267, ¶ 11, 334 Mont. 195, 146 P.3d 741; *Stavenjord v. Mont. State Fund*, 2003 MT 67, ¶ 45, 314 Mont. 466, 67 P.3d 229. Additionally, constitutional issues should be avoided whenever possible. *Weidow v. Uninsured Employers' Fund*, 2010 MT 292, ¶ 22, 359 Mont. 77, 246 P.3d 704; *Sunburst Sch. Dist. No. 2 v. Texaco, Inc.*, 2007 MT 183, ¶ 62, 338 Mont. 259, 165 P.3d 1079.

¶28 We begin our analysis of the equal protection challenge with a discussion of mootness. "Mootness is a threshold issue which must be resolved before addressing the underlying dispute." *Briese v. Mont. Pub. Emples. Ret. Bd.*, 2012 MT 192, ¶ 14, 366 Mont. 148, 285 P.3d 550; *Med. Marijuana Growers Ass'n v. Corrigan*, 2012 MT 146, ¶ 18, 365 Mont. 346, 281 P.3d 210. This Court has described a moot question as "one which existed once but because of an event or happening, it has ceased to exist and no

11

longer presents an actual controversy." *Corrigan*, ¶ 18; *Povsha v. City of Billings*, 2007 MT 353, ¶ 19, 340 Mont. 346, 174 P.3d 515. A question is moot "if the issue presented at the outset of the action has ceased to exist or is no longer "live," or if the court is unable due to an intervening event or change in circumstances to grant effective relief or to restore the parties to their original position." *Progressive Direct Ins. Co. v. Stuivenga*, 2012 MT 75, ¶ 17, 364 Mont. 390, 276 P.3d 867; *Greater Missoula Area Fedn. of Early Childhood Educators v. Child Start, Inc.*, 2009 MT 362, ¶ 23, 353 Mont. 201, 219 P.3d 881.

¶29 "This Court declines consideration of constitutional issues which are rendered moot by jury verdicts or court judgments." *Allmaras v. Yellowstone Basin Properties*, 248 Mont. 477, 480, 812 P.2d 770, 771 (1991); *Stelling v. Rivercrest Ranches, Inc.*, 224 Mont. 313, 316-17, 730 P.2d 388, 390-91 (1986). In *Allmaras*, two employees brought wrongful discharge claims against their former employer. *Allmaras*, 248 Mont. at 479, 812 P.2d at 771. A jury found that the employees had not been wrongfully discharged. *Allmaras*, 248 Mont. at 479, 812 P.2d at 771. The employees appealed, asserting that Montana's Wrongful Discharge Act is unconstitutional on various grounds, including an argument that it violates the right to trial by jury because it places a cap on damages. *Allmaras*, 248 Mont. at 479, 812 P.2d at 771. We determined that the constitutional questions were rendered moot by the jury's determination that the employees were not wrongfully discharged. *Allmaras*, 248 Mont. at 480, 812 P.2d at 771. Since the jury found that the employees were not entitled to any damages under the statute, the employees no longer had standing to raise the constitutional challenge because they could

12

not establish that they had been adversely affected by the statute's cap on damages. *Allmaras*, 248 Mont. at 480, 812 P.2d at 771.

¶30 In the instant case, *Allmaras* is instructive because Alexander's constitutional challenge was rendered moot by the jury verdict. The jury found in favor of Bozeman Motors' employees Wallin, Snedeker, and Beverage. The jury determined that Bozeman Motors' employees did not intentionally and deliberately act to injure Alexander. Under these circumstances, the question of whether § 39-71-413(2), MCA, violates equal protection by ostensibly eliminating vicarious liability for corporations becomes moot. Bozeman Motors could be held vicariously liable only if its employees themselves were first found liable for intentionally or deliberately acting to harm Alexander. Since the jury determined that Wallin, Snedeker, and Beverage were not liable, all questions regarding the imposition of vicarious liability upon Bozeman Motors were thereafter moot. The jury verdict effectively foreclosed any possible application of § 39-71-413(2), MCA, to Bozeman Motors. We hold that Alexander's equal protection challenge is moot, and we therefore decline to reach the merits of his constitutional arguments.

¶31 *Did the District Court abuse its discretion when it excluded the term "employee" from Jury Instruction No. 34?*

¶32 Jury Instruction No. 34, as given by the District Court, read as follows:

> A corporation is in law a person, but, of course it cannot act otherwise than through its directors, or officers, or shareholders. The law, therefore, holds a corporation responsible for all acts of its directors, or officers, or shareholders, provided such acts are done within the scope of their authority and to benefit the corporation.
>
> Authority to act for a corporation in a particular matter, or in a particular way or manner, may be inferred from the surrounding facts and circumstances shown by the evidence in the case. That is to say, authority

13

to act for a corporation, like any other fact in issue in a civil case, need not be established by direct evidence, but may be established by circumstantial evidence.

Alexander argues that Jury Instruction No. 34 should have included "employee" among those who act on behalf of a corporation and for whom a corporation is responsible. The District Court excluded "employees" from the first two sentences of the instruction in order to reconcile the instruction with the bar against vicarious liability contained in § 39-71-413(2), MCA. While recognizing that the statute shields employers from vicarious liability for the intentional and deliberate acts of employees, Alexander contends that the jury instruction also improperly shielded Bozeman Motors from direct liability because a corporation can act only through its agents.

¶33 In our review of whether a particular jury instruction was properly given or refused, we consider the instruction in its entirety and in connection with the other instructions given and the evidence presented at trial. *DiMarzio v. Crazy Mt. Constr., Inc.*, 2010 MT 231, ¶ 37, 358 Mont. 119, 243 P.3d 718; *Vincent v. BNSF Ry. Co.*, 2010 MT 57, ¶ 14, 355 Mont. 348, 228 P.3d 1123. "The party assigning error to a district court's instruction must show prejudice in order to prevail, and prejudice will not be found if the jury instructions in their entirety state the applicable law of the case." *DiMarzio*, ¶ 37.

¶34 Bozeman Motors and the State assert that Alexander's arguments concerning Jury Instruction No. 34 are moot because the jury determined that none of the individual employees or agents were liable. We must consider the issue of mootness before addressing the underlying merits of Alexander's argument because mootness is a

threshold issue. *Briese*, ¶ 14. In light of the jury verdict which found in favor of Wallin, Snedeker and Beverage, the question of whether the actions of those employees or agents confer direct liability to Bozeman Motors is irrelevant. Therefore, we hold that the jury verdict rendered the dispute over Jury Instruction No. 34 moot, and no prejudice occurred.

¶35 *Did the District Court abuse its discretion in rejecting the Plaintiff's Proposed Jury Instruction Nos. 25, 26, 28 and 29?*

¶36 The District Court rejected the following four proposed instructions at issue in this appeal:

> An agent is one who represents another, called a principal, in dealings with third persons.

Plaintiff's Proposed Jury Instruction No. 25.

> Any act or omission of an agent [Beverage, Snedeker, Wallin] is the act or omission of a principal [Bozeman Motors, Inc.].

Plaintiff's Proposed Jury Instruction No. 26.

> An employer is liable for all damages caused by the acts and omissions of his/her employee while acting within the scope of his/her employment.

Plaintiff's Proposed Jury Instruction No. 28.

> The employer is responsible for his/her employee's actions if they were in furtherance of or incidental to the employment even though the actions were fraudulent, willful, malicious, or forbidden.

Plaintiff's Proposed Jury Instruction No. 29.

¶37 Alexander argues that the District Court abused its discretion in refusing to offer these instructions. The jury instructions at issue are all vicarious liability pattern instructions. For the same reasons set forth above in our resolution of Issue 2, we hold

15

that the controversy over the District Court's refusal to offer these jury instructions is moot.

¶38 *Did the District Court abuse its discretion when it denied Plaintiffs' motion in limine to exclude Michael Alexander's cause of death?*

¶39 In a motion in limine filed April 15, 2011, Nicole and Helen Alexander asked the District Court for an order "prohibiting evidence or argument regarding the cause of death of Mike Alexander or any other evidence not related to damages." Plaintiffs argued that Alexander's cause of death was not relevant because they did not allege that exposure to carbon monoxide caused the death of Alexander, they did not bring claims of wrongful death or survivorship, and no autopsy was performed. Plaintiffs also asserted that if the cause of death had any possible relevance, it remained inadmissible under M. R. Evid. 403. Defendants countered that the cause of Alexander's death was relevant because it was consistent with the theory that Alexander was experiencing symptoms of alcoholism and not carbon monoxide or gas poisoning. The District Court concluded that the cause of Alexander's death was probative of the cause of his injuries, and such evidence was not overly prejudicial or misleading in light of the other admissible evidence concerning his alcohol abuse. The District Court denied the Plaintiffs' motion.

¶40 At trial, the jury heard testimony from several medical experts and treating physicians concerning Alexander's cause of death. Dr. Timothy Johnson treated Alexander during his hospitalization and offered his opinion that Alexander's health problems and symptoms were likely caused by alcohol abuse and not carbon monoxide exposure. Dr. Tom Bennett, a forensic pathologist, testified that Alexander's medical

16

records revealed a prolonged drinking problem that caused extensive liver damage, which eventually caused his death. Plaintiff's expert Dr. Raymond Singer testified that his diagnosis, which related Alexander's symptoms to neurotoxic chemical exposure rather than alcoholism, was still valid even though Alexander's death certificate contained no mention of carbon monoxide exposure. On appeal, Nicole and Helen Alexander argue that the wrongful admission of this evidence and testimony entitles them to a new trial.

¶41 Relevant evidence is any "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M. R. Evid. 401. The physical injuries that Alexander suffered and the cause of those injuries were central to this action. The defense theory in this case, which was supported by the testimony of several medical experts and Alexander's medical records, was that Alexander's alcohol abuse caused his health problems and his eventual death. Evidence and testimony concerning the cause of Alexander's health problems and his death were certainly relevant in allowing the jury to make factual determinations regarding causation and damages. The District Court did not abuse its discretion in concluding that evidence concerning Alexander's cause of death was relevant.

¶42 Even though evidence is relevant, it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." M. R. Evid. 403. Alexander maintains that the admission of evidence concerning the cause of death was unfairly prejudicial and

cumulative, and led to confusion. As we have already discussed, the evidence of Alexander's cause of death was highly probative. The jury was well aware that Alexander was deceased. Excluding all evidence that spoke to the circumstances of his death could have led the jury to improperly speculate on the link between his exposure to carbon monoxide and his death. Taking into account all of the evidence before the jury, it is clear that the probative value of admitting evidence of Alexander's cause of death was not "substantially outweighed" by the dangers discussed in M. R. Evid. 403. Therefore, we hold that the District Court did not abuse its discretion in denying Plaintiffs' motion in limine.

## CONCLUSION

¶43 For the foregoing reasons, we affirm the jury verdict in favor of Bozeman Motors and its employees.


/S/ PATRICIA COTTER

We concur:

/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS
/S/ BETH BAKER
/S/ JIM RICE

18